**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NORTH AMERICAN ELITE INSURANCE
COMPANY, as subrogee of MAINE
AVIATION CORPORATION d/b/a MAC
AIR GROUP, *et al*.,

    *Plaintiff*,

  v.

GENERAL AVIATION FLYING SERVICE,
INC. d/b/a MERIDIAN JET CENTER,

    *Defendant*.

GENERAL AVIATION FLYING SERVICE,
INC. d/b/a MERIDIAN JET CENTER,

    *Third-Party Plaintiff*,

  v.

SIGNATURE FLIGHT SUPPORT
CORPORATION, and ON SITE AIRCRAFT
SERVICE, INC.,

    *Third-Party Defendants*.

Civil Action No. 18-14575
(JMV) (SCM)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    Defendant/Third-Party Plaintiff General Aviation Flying Service, Inc. d/b/a Meridian Jet Center ("Meridian") brings a third-party complaint against Third-Party Defendants Signature Flight Support Corporation ("SFS") and On Site Aircraft Service, Inc. ("OSAS") (collectively "Third-Party Defendants") for common law indemnification and contribution. D.E. 25. Currently

pending before the Court are Third-Party Defendants' motions to dismiss for lack of personal jurisdiction. D.E. 34, 40. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Third-Party Defendants' motions to dismiss are denied without prejudice to permit jurisdictional discovery.

## I. BACKGROUND

The underlying Plaintiff in this matter, North American Elite Insurance Company ("N.A. Elite" or "Plaintiff"), as subrogee of Maine Aviation Corporation d/b/a Mac Air Group, *et al.*[2] ("Plaintiff's subrogors") sued Defendant/Third-Party Plaintiff Meridian for damages incurred as a result of Meridian's allegedly faulty repair of a 2005 Cessna Citation CJ 3 aircraft (the "Aircraft"). D.E. 1, ¶¶ 2, 10-36. In turn, Defendant/Third-Party Plaintiff Meridian filed a third-party complaint ("TPC") against Third-Party Defendants SFS and OSAS for indemnification and contribution in the event that Meridian is found liable. D.E. 25.

Meridian is a New Jersey corporation with its principal place of business in New Jersey. TPC ¶ 1. SFS is a Delaware corporation with its principal place of business in Florida and is allegedly "registered to conduct business in New Jersey." *Id.* ¶ 2. OSAS is an Illinois corporation

---

[1] SFS's brief in support of its motion to dismiss will be referred to as "SFS Br." (D.E. 35); Meridian's opposition to SFS's motion will be referred to as "Meridian's Opp. to SFS" (D.E. 38); and SFS's reply will be referred to as "SFS Reply" (D.E. 43). OSAS's brief in support of its motion to dismiss will be referred to as "OSAS Br." (D.E. 40); Meridian's opposition to OSAS's motion will be referred to as "Meridian's Opp. to OSAS" (D.E. 46); and OSAS's reply will be referred to as "OSAS Reply" (D.E. 51).

[2] Plaintiff is fully referred to as North American Elite Insurance Company, as subrogee of Maine Aviation Corporation doing business as Mac Air Group, Mac Aircraft Sales, LLC, Maine Aviation Aircraft Maintenance, LLC, Maine Aviation Flight School, LLC, Maine Aviation Aircraft Charter, LLC, MAC Jets, LLC and their Subsidiary or Affiliate Companies (collectively, "MAC") and N823LT, LLC (the "Owner") (together, "Plaintiff"). D.E. 1, at 1.

with its principal place of business in Missouri. *Id.* ¶ 3. On or about July 8, 2016, a fire started in the Aircraft while it was parked at St. Louis Lambert International Airport in St. Louis, Missouri. *Id.* ¶ 7. At the time of the fire, the Aircraft "was parked [on SFS's] ramp" at the airport. *Id.* Meridian alleges that after the Aircraft caught fire, an SFS employee "discharged a fire extinguisher inside the Aircraft to extinguish the flame." *Id.* ¶ 8. However, the extinguisher "was a dry chemical extinguisher containing potassium bicarbonate," meaning that the extinguisher was not approved by the Federal Aviation Authority ("FAA") for use on an aircraft because the extinguisher "contains chemicals that are corrosive and abrasive, and may cause severe damage to [an] [a]ircraft and [its] electronic components." *Id.* ¶¶ 9-11.

After the SFS employee put out the fire with the allegedly unapproved extinguisher, the Aircraft was then "taken or referred to OSAS [] to be cleaned [on the airport's premises]." *Id.* ¶ 12. Meridian alleges that "OSAS failed to clean all of the fire extinguisher contaminant inside the Aircraft prior to returning [it] to service." *Id.* ¶ 13. Meridian claims that after OSAS's alleged cleaning failure, "OSAS obtained from the FAA a special ferry permit for the aircraft to be flown" directly from St. Louis to Teterboro, New Jersey. *Id.* ¶ 16. Meridian further alleges that OSAS "was aware that operating the Aircraft on the ferry flight would further spread the dry chemical fire extinguisher contaminant remaining in the tail throughout [that] section of the Aircraft and its electronic components." *Id.* ¶ 17.

Plaintiff filed its Complaint against Meridian on October 2, 2018. D.E. 1. Meridian thereafter filed its third-party complaint against SFS and OSAS on July 11, 2019. D.E. 25. SFS and OSAS moved to dismiss Meridian's third-party complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). D.E. 34, 40. Meridian filed opposition to both motions, D.E. 38, 46, to which SFS and OSAS replied. D.E. 43, 51.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss a case for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). In such a motion to dismiss, the plaintiff[3] "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). When a court "resolves the jurisdictional issue in the absence of an evidentiary hearing and without the benefit of discovery, the plaintiff need only establish a prima facie case of personal jurisdiction." *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 461 (D.N.J. 2015). In such cases, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

However, once a defendant raises a jurisdictional defense, the "plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id*. In other words, a court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). Plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Otsuka*, 106 F. Supp. 3d at 462 (citing *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). In addition, a court "may always revisit the issue of personal jurisdiction if later revelations reveal that the facts alleged in support of jurisdiction remain in dispute." *Otsuka*, 106 F. Supp. 3d at 462 n.5 (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009)).

---

[3] The Court uses the common titles of plaintiff and defendant in describing the legal standard. The Court's analysis, however, is the same if the parties are actually third-party plaintiff and third-party defendants, as here.

## III. LAW AND ANALYSIS

Federal courts "engage[] in a two-step inquiry to determine whether [they] may exercise personal jurisdiction": (1) "whether the relevant state long-arm statute permits the exercise of jurisdiction," and (2) "if so, [whether] the exercise of jurisdiction comports with due process" under the Fourteenth Amendment. *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)); *see also* Fed. R. Civ. P. 4(k)(1)(A) (indicating that service "establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). "New Jersey's long-arm statute extends the state's jurisdictional reach as far as the United States Constitution permits, so the analysis turns on the federal constitutional standard for personal jurisdiction." *Id*. (citing *IMO Industries*, 155 F.3d at 259). Accordingly, the two steps are collapsed into one and courts "ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co*., 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

"Personal, or in personam, jurisdiction, [generally] divides into two groups: 'specific jurisdiction' and 'general jurisdiction.'" *Display Works*, 182 F. Supp. 3d at 172 (citing *Burger*

*King*, 471 U.S. at 472 n.14 (1985)).[4] Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Id*. (quoting *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014)). General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Id*. (quoting *Walden*, 571 U.S. at 284 n.6). If a defendant is subject to a forum's general jurisdiction, the defendant can be sued there on any matter. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If, however, a defendant is solely subject to specific jurisdiction, the defendant may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id.*

### A. General Personal Jurisdiction

General jurisdiction may be asserted over an out-of-state corporation "when [its] affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* For an entity, its "place of incorporation and principal place of business are paradigm bases for general jurisdiction[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotations omitted). If general jurisdiction is established, a court may hear any and all claims against the defendant. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919.

Here, Plaintiff has not demonstrated that the Court has general personal jurisdiction over either SFS or OSAS. As an initial matter, Meridian does not argue that there exists general personal jurisdiction over OSAS. *See generally* Meridian's Opp. to OSAS (only asserting specific jurisdiction). In any event, neither SFS nor OSAS is incorporated in New Jersey, and neither has

---

[4] There are other means to establish personal jurisdiction, such as consent, waiver, or in-state service. Those other methods are not at issue.

6

its principal place of business in New Jersey. TPC ¶¶ 2-3. Rather, SFS is incorporated in Delaware with its principal place of business in Florida. *Id.* ¶ 2; *see also* SFS Br. at 6. OSAS is an Illinois corporation with its principal place of business in Missouri. *Id.* ¶ 3; *see also* OSAS Br. at 2. Accordingly, the paradigmatic bases for general jurisdiction are lacking in this case.

Moreover, Meridian fails to establish that this is an "exceptional case" that warrants the exercise of general jurisdiction. *See Daimler*, 571 U.S. at 139 n.19. Meridian argues that the Court has general personal jurisdiction over SFS because SFS's contacts with New Jersey are "extensive and pervasive . . . [so that] it is reasonable to conclude that [SFS] is essentially at home in New Jersey." Meridian's Opp. to SFS at 14. The factual crux of Meridian's argument is that SFS has operated in New Jersey for twenty-three years; maintains a registered agent for acceptance of service of process in New Jersey; since 1996 has merged with two New Jersey corporations; and has seven "operations centers at airports located throughout" New Jersey. *Id.* Even accounting for these contacts, however, "[a] corporation's 'continuous activity of some sort within a state,' *International Shoe* instructed, 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 927 (quoting *International Shoe*, 326 U.S. at 318).

Whether this Court has general jurisdiction over SFS, therefore, turns on whether this is an "exceptional case" where SFS's contacts with New Jersey "are so 'continuous and systematic' as to render [SFS] essentially at home" in New Jersey. *See Daimler*, 571 U.S. at 139 n.19 ("We do not foreclose the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.") (internal citation omitted)); *see also Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (noting that the Fifth

Circuit "has commented that it is 'incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business'") (emphasis in original) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)).

SFS's contacts with New Jersey do not rise to the level of rendering it "essentially at home" in New Jersey. The Supreme Court has explained that "'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State." *Bristol-Myers Squibb Co. v. Sup. Ct.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Daimler*, 571 U.S. at 137), and it is evident that such affiliations are those that render a defendant essentially at home in the forum state. *See Daimler*, 571 U.S. 571 U.S. at 138-39 ("[T]he inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'") (internal citation omitted). Neither SFS nor OSAS have contacts with New Jersey that rise to such a heightened level. As such, the Court finds that it lacks general personal jurisdiction over both SFS and OSAS.

**B. Specific Personal Jurisdiction**

Specific jurisdiction requires the defendant to have "purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472 (internal citations and quotations omitted). The Third Circuit has developed a three-part test in determining whether specific personal jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317 (internal quotations omitted). First,

the defendant must have "purposefully directed [its] activities at the forum."[5] *Id*. (internal quotations omitted). Second, the plaintiff's claims "must arise out of or relate to at least one of those activities." *Id*. (internal quotations omitted). Third, if the first two requirements are met, the exercise of jurisdiction must "otherwise comport with fair play and substantial justice." *Id*. (internal quotations omitted). The Court addresses the existence of specific personal jurisdiction over SFS and OSAS in turn.

1. **Specific Jurisdiction over SFS**

Meridian claims that SFS is subject to this Court's specific jurisdiction. As to the first *O'Connor* factor, Meridian argues in sum that, "by operating seven different facilities in [New Jersey], registering to do business in the state, and contracting with Plaintiff's subrogors to base and/or provide services to the [] Aircraft in" the state, SFS has purposefully directed its activities at New Jersey. Meridian's Opp. to SFS at 10. The Court agrees that SFS has purposefully directed its activities towards New Jersey.

As to the second *O'Connor* factor, however, it appears that this litigation does not arise out of or relate to SFS's contacts with New Jersey. Elaborating on the second *O'Connor* factor, the Third Circuit has recently reiterated that "tort claims [*i.e.* common law indemnification and contribution on account of a third party's negligence] require[] a closer and more direct causal connection than but-for causation." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948

---

[5] This factor has also been characterized as "purposeful availment." *Burger King*, 471 U.S. at 475. The factor focuses on contact that the defendant itself created with the forum State. *Id.* The "purposefully directed" or "purposeful availment" requirement is designed to prevent a person from being haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third person." *Id.* (internal quotations omitted) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)); *World-Wide Volkswagen Corp.*, 44 U.S. at 299; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

F.3d 124, 130 (3d Cir. 2020) (internal quotations and citation omitted). Here, as SFS points out, the complained-of conduct in which SFS engaged happened entirely in Missouri – not in New Jersey. As such, it appears that Meridian's claims against SFS do not "arise out of or relate to" SFS's contacts with New Jersey

Meridian, however, argues that there exists specific jurisdiction over SFS because SFS maintained a "business relationship [with Plaintiff's subrogors] to base and/or provide services to the [] Aircraft at [SFS's] facilities" in New Jersey. Meridian's Opp. to SFS at 11. Meridian claims that, as part of this "business relationship," SFS "granted Plaintiff's subrogors the right to use [SFS's] network of facilities located throughout the country, including [SFS's] facility [in Missouri], where the [i]ncident occurred." *Id*. Meridian contends that "such use would inevitably require coordination between [SFS] facilities that would eventually lead back to" New Jersey. *Id*. To this point, the Supreme Court explained in *Burger King* that "with respect to interstate contractual obligations, . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." 471 U.S. at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)). *Cf. Danziger & De Llano, LLP*, 948 F.3d at 130 (explaining that "the [parties'] alleged oral referral contract was neither formed nor breached in [the forum state]").

However, Meridian does not allege, for example, that SFS reached out to Plaintiff's subrogors in New Jersey to consummate their "business relationship," or that any contract between Plaintiff's subrogors and SFS was entered into in New Jersey. More importantly, Meridian does not allege that Meridian itself had any contractual relationship with SFS that related to New Jersey, much less facts to support the inference that *Meridian*'s indemnification and contribution claims

10

concerning SFS's conduct in Missouri "arise out of or relate to" SFS's contacts to New Jersey. *See O'Connor*, 496 F.3d at 318 ("Identifying some purposeful contact with the forum is but the first step in the specific-jurisdiction analysis. The plaintiffs' claims must also arise out of or relate to at least one of those contacts.") (internal quotations omitted). Absent any such jurisdictional facts, the Court does not find that the second *O'Connor* factor is satisfied. In sum, the Court finds that Meridian's claims against SFS do not "arise out of or relate to" SFS's contacts with New Jersey. Rather, it appears that Meridian's claims against SFS concern conduct by SFS that occurred entirely in Missouri. Therefore, the Court finds at this juncture that it lacks specific personal jurisdiction over SFS.

### 2. Specific Jurisdiction over OSAS

Meridian argues that the Court has specific jurisdiction over OSAS as a result of OSAS's application for a special ferry permit[6] to fly the Aircraft to New Jersey and its corresponding flight. Meridian's Opp. to OSAS at 10. Meridian asserts that "it is reasonable to *assume* that [OSAS] communicated with Plaintiff's subrogors in New Jersey concerning the removal of the fire extinguisher contaminant and the status of the ferry permit for the Aircraft's flight to New Jersey." *Id*. (emphasis added); *see also id*. (arguing that OSAS "*possibly* communicat[ed] with Plaintiff's subrogors in the state of New Jersey [] while it was servicing the Aircraft") (emphasis added). In response, OSAS argues that it has none of the traditional contacts with New Jersey that courts typically examine when conducting a minimum-contacts analysis, and claims that "any and all actions alleged to have been [taken] by OSAS occurred outside of the state of New Jersey[.]" OSAS Br. at 4-5. OSAS also points out that "the Aircraft was flown [] at the *owner's* election[,]

---

[6] Meridian explains that "[a] special flight permit (commonly referred to as a 'ferry permit') is issued by the FAA for an aircraft that may not meet applicable airworthiness requirements but is [still] capable of safe flight." Meridian's Opp. to OSAS at 3.

11

by the *owner's* pilots pursuant to a one-time" special flight permit. OSAS Reply at 2 (emphasis added). Meridian appears to concede as much in its opposition. Meridian's Opp. to OSAS at 1-2 ("Plaintiff first hired [OSAS] to clean the dry chemical extinguisher contaminant [] and to obtain a special ferry permit").

Here, it appears that OSAS has not "purposely directed its activities" at New Jersey. *O'Connor*, 496 F.3d at 317. OSAS performed all its work on the Aircraft in Missouri. As to Meridian's argument that "it is reasonable to *assume*" or it is "*possible*" that OSAS communicated with Plaintiff's subrogors in New Jersey regarding its work performed in Missouri, such assumptions or possibilities are insufficient for this Court to exercise jurisdiction. *See Otsuka*, 106 F. Supp. 3d at 462 (explaining that the party asserting personal jurisdiction must establish "with reasonable particularity sufficient contacts between the defendant and the forum state"); *see also Dayhoff Inc.*, 86 F.3d at 1302 (indicating that the "plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper").

The Court is also unable to determine whether the Aircraft's special ferry flight from Missouri to New Jersey confers jurisdiction in light of the fact that the parties dispute the extent to which that action was taken by OSAS's own initiation, or rather at the direction of Plaintiff's subrogors. Aside from these actions, however, Meridian appears to concede that OSAS has no other contacts with New Jersey, much less any from which Meridian's claims "arise out of or relate to." *O'Connor*, 496 F.3d at 317. At this juncture, the Court is unable to conclude that OSAS purposefully directed activity toward New Jersey, and therefore, the Court finds that it lacks specific personal jurisdiction over OSAS.

At this time, Meridian has not carried its burden of demonstrating the existence of personal jurisdiction over either SFS or OSAS.

### C. Jurisdictional Discovery

Alternatively, Meridian asks the Court for permission to engage in jurisdictional discovery should the Court be "hesitant to exercise personal jurisdiction" over SFS and OSAS. *See, e.g.*, Meridian's Opp. to SFS at 15. A court should "ordinarily allow [limited jurisdictional discovery] when a plaintiff's claim to personal jurisdiction is not clearly frivolous[,]" *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (internal quotations omitted), although "jurisdictional discovery is not available merely because the plaintiff requests it." *Lincoln Benefit Life Ins. Co. v. AEI Life, LLC*, 800 F.3d 99, 108 n.38 (3d Cir. 2015). Rather, "[i]f the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (2003)). In setting the scope of such jurisdictional discovery, the Court must be mindful that "[j]urisdictional discovery is not a license for the parties to engage in a 'fishing expedition[.]'" *Schuchardt v. President of the United States*, 839 F.3d 336, 353 (3d Cir. 2016) (quoting *Lincoln Benefit Life Ins. Co.*, 800 F.3d at 108 n.38). Here, Meridian contends that its claims are not frivolous, and that jurisdictional discovery would shed additional light on the factual allegations underpinning its argument that this Court has personal jurisdiction over SFS and OSAS. *See, e.g.*, Meridian's Opp. to SFS at 15-16.

With respect to SFS, Meridian largely reiterates that SFS has extensive and systematic contacts with New Jersey and that SFS's complained-of conduct has its "basis" in "the business relationship between Plaintiff's subrogors and [SFS] for home-basing and services at Teterboro Airport" in New Jersey. *Id*. at 16. Meridian further asserts that "[s]uch discovery would explore

13

the extent of [SFS's] contacts with the state of New Jersey, particularly as they relate to the [] Aircraft and Plaintiff's subrogors." *Id*. at 15.  The Court finds merit with Meridian's request for jurisdictional discovery.  As Meridian points out, the Aircraft is housed in New Jersey, and SFS's alleged negligent use of the fire extinguisher in Missouri may relate to SFS's "business relationship" with Plaintiff's subrogors.  As the Court noted above, if SFS in fact reached out to Plaintiff's subrogors in New Jersey and contracted with Plaintiff's subrogors in New Jersey to provide services at, *inter alia*, the airport in Missouri, then perhaps the circumstances surrounding that business relationship may uncover additional facts that would give rise to personal jurisdiction in New Jersey.  Given the relatively low showing that the Third Circuit requires of parties seeking jurisdictional discovery, the Court grants Meridian's request for jurisdictional discovery as to SFS.

With respect to OSAS, Meridian argues that its jurisdictional discovery "would explore the extent of [OSAS's] activities in cleaning the Aircraft and procuring the ferry permit to the state of New Jersey, particularly as they pertain to [OSAS's] communications with Plaintiff's subrogors." Meridian's Opp. to OSAS at 15.  Meridian further argues that "the extent of [OSAS's] communications with Plaintiff's subrogors and the FAA for the relevant time period should be explored." *Id.* at 16.  The Court also finds merit with Meridian's request for jurisdictional discovery.  Inquiring into the circumstances surrounding OSAS and the ferry permit to New Jersey may uncover additional facts that would give rise to jurisdiction in New Jersey.  As noted, given the relatively modest showing that the Third Circuit requires of parties seeking jurisdictional discovery, the Court grants Meridian's request for jurisdictional discovery as to OSAS.

In sum, the Court grants jurisdictional discovery in this matter.

## IV. CONCLUSION

For the foregoing reasons, the Court denies without prejudice Third-Party Defendants' motions to dismiss, D.E. 34, 40, pending the outcome of jurisdictional discovery. Upon completion of jurisdictional discovery, Third Party Defendants may renew their motions to dismiss should they choose. An appropriate Order accompanies this Opinion.

Dated: March 30th, 2020

John Michael Vazquez, U.S.D.J.